Samuel H. Hofstadter, J.
Plaintiff sues upon a major medical expense policy issued by defendant, covering plaintiff, Ms wife, Ms daugMer and two sons. Subject to the limitations contained in the policy, defendant agreed to reimburse plaintiff *411 for loss “ resulting from injury or sickness as defined in Part I of this policy.”
Bichard M. Prince, one of plaintiff’s sons, was involved in an accident on August 2, 1960. The resultant injury required the enucleation of his left eye. At the time of the accident he was a normal, healthy 10-year old. Further, his home life was happy and healthy, he got along well with his brother and sister and engaged in athletic and social activities usual for such a boy. After the accident and loss of his eye, he became obstinate, ran away from home, attempted to destroy himself, destroyed his personal property and effects, his school marks deteriorated, he associated with the wrong type of boys, his personal habits and cleanliness changed for the worse and he lost a grade in school.
To correct this condition, his parents took him to plaintiff’s witness Dr. J. Louise Despert, a child psychiatrist, whose invoices are the basis of the claim in suit. Bichard has now adjusted, is attending private school, comes home or is visited on week ends, is maintaining better than average grades, has won awards and honors and has resumed all activities, other than dangerous physical sports, in which a normal boy of 13 participates.
To the foregoing findings, defendant has stipulated; and defendant has paid, within the monetary limitations of the policy, for the medical expense other than Dr. Despert’s charges incurred by plaintiff. The only issue tried was whether the psychiatric treatment given Bichard came within the purview of the policy. The parties have agreed that if it does, defendant is liable for the sum of $4,399.41.
Dr. Despert described the condition she found as an injury to the psyche resulting from the loss of an essential organ — not a disease but a reaction to a traumatic injury — a psychoneurotic disorder related to the physical trauma. While there was no physical damage to the brain there did exist, she said, a mental dysfunction. Defendant’s witness, Dr. Jacob L. Weinstock, described the disturbance as a psychoneurosis which was a reaction to the physical injury the boy sustained — a mental disorder. He conceded that it was possible to sustain a mental injury without a physical injury to the brain.
I find that the condition which underlies this action was the psychic reaction to the physical injury the boy suffered and a mental injury to his brain.
In Part I of the policy “ Injury ” is defined to mean “ bodily injury * * * resulting directly and independently of all *412 other causes in loss covered by this policy.” “ Sickness ” is separately defined. It means “ sickness or disease * * * causing loss covered by this policy commencing while this policy is in force as to the person whose sickness is the basis of claim.” Under Part II “ Covered Expenses” include “Treatment, surgical or medical, by a legally qualified physician or surgeon.”
The Court of Appeals has said that such “ meaning must be given to the terms used [in a policy] as would be ascribed to them by the average man in applying for insurance and reading the langauage of the policy at the time it was written ’ ’ (McGrail v. Equitable Life Assur. Soc., 292 N. Y. 419, 424). So read, the expenditures claimed by plaintiff would clearly appear to have resulted from bodily injury, and covered by the policy.
We are met, however, by defendant’s contention that it is relieved of liability by the exception in Part V of the policy that it shall not cover loss caused by or resulting from “ mental disease or deficiencies, psychotic or psychoneurotic disorders or re-actions ”. Would an average policy holder so understand this exception? I b.elieve not.
The average person is not familiar with mental disease from the strictly medical point of view — and a layman is not required to read his policy as if he were a psychiatrist (Shneiderman v. Metropolitan Cas. Co., 14 A D 2d 284, 287). A layman would read the exception as applying to mental disorders unconnected with bodily injury. The disorder before me was concededly caused by bodily injury.
It is unthinkable that had Richard gone berserk immediately following the accident, medical treatment for this condition would not be deemed an insured risk. Given the same underlying cause, the conclusion does not differ because of the degree of mental injury or the lapse of time before it made itself manifest.
Did doubt exist, defendant’s position could still not prevail. Defendant drew the policy. It must be read in its plain and ordinary sense. Its general intent was to protect against ‘1 injury or sickness as defined in Part I of this policy. ’ ’ To limit such generally intended coverage, the company was bound to use clear and unmistakable terms so that no one might be misled. If exclusion of liability not apparent from the language employed was intended, it was the insurer’s responsibility to make such intention clearly known. “ The rule which dictates construction of any ambiguity against the insurer has particular application where exclusions are involved ” (Shneiderman v. Metropolitan Cas. Co., 14 A D 2d 284, 289, supra). Any doubt in the construction to be adopted must be resolved against it (Sperling v. Great *413 Amer. Ind. Co., 7 N Y 2d 442, 447; Taylor v. United States Cas. Co., 269 N. Y. 360, 364 ; Ætna Cas. & Sur. Co. v. General Cas. Co., 285 App. Div. 767, 770). No such clear intention is evidenced in the policy before me.
Judgment is accordingly directed in favor of plaintiff in the sum of $4,399.41, with interest from June 15, 1962.